UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1580 DSD/SRN

| | | |
|---|---|---|
| DAVID C. LARSON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>U.S. DEPARTMENT OF JUSTICE, and<br>FEDERAL BUREAU OF PRISONS,<br><br>Defendants. | ) | **TRIAL BRIEF OF DEFENDANT UNITED STATES OF AMERICA** |

## INTRODUCTION

_____Plaintiff David Larson ("Larson") has sued the United States under the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 1346(b), 2671-80, for personal injuries he allegedly suffered when he fell on ice at the Federal Prison Camp, Duluth, Minnesota ("FPC Duluth") on November 24, 1999. However, any danger was open and obvious and Larson primarily assumed the risk of the open and obvious danger; therefore, the United States owed no duty to Larson. Larson's sole claim is that no salt was used; however, the BOP did place a sand/rock salt mixture on the road. Larson's secondary assumption of risk and other comparative fault far exceeded any BOP negligence. For these and the other reasons that follow, the Court should enter judgment for the United States.

## BACKGROUND FACTS

Larson, a lifelong resident of the Madison, Wisconsin area, was convicted on fraud charges and became incarcerated at FPC Duluth in February 1998. He took a position with the landscaping

crew which did snow removal during the winter months.

In March 1999, he injured himself while on the job in an accident while plowing snow with a machine. Subsequently, he was diagnosed with a herniated L5-S1 disk. He underwent a laminectomy/diskectomy on August 30, 1999. He was never free from pain as a result of the March 8, 1999 incident.

Duluth experienced its first snowstorm of the year throughout the day of November 23 and into the early hours of November 24, 1999. Nearly six (5.7) inches of snow fell. On Wednesday, November 24, the BOP snow crew of inmates cleared the snow on Vandenburg Drive, swept it clear to the blacktop, and applied a mixture of sand and salt. That day, November 24, the temperature reached 37 degrees and dropped to 31-32 degrees that evening.

Larson alleges that, on his way to make his nightly call to his wife, he fell on an ice patch at the edge of Vandenburg Drive outside the library building. He testified he saw the road, which he described as "shiny" and "slippery" under foot, walked slowly because of its condition and to protect his back, but nevertheless he fell. It happened very quickly.

As a result of the fall, Larson claims to have re-injured his back and injured his shoulder. He underwent a second back surgery in May 2000 and a shoulder operation in October 2000. While the shoulder surgery was successful, his back allegedly continued to cause him discomfort. He was released from BOP custody in March

2003 and underwent a spinal fusion in April 2003 at the University of Wisconsin.

The United States had an adverse medical exam of Larson performed, the results of which are set forth in two reports. Suffice it to say that, after the first surgery but before the alleged fall on November 24, 1999, Dr. Graebner would have found Larson five percent (5%) disabled. Presently, after two additional surgeries, Dr. Graebner found Larson to have a ten percent (10%) permanent partial disability. Not all the five percent difference is attributable to the fall as some of this additional disability would be the result of Larson's preexisting condition or other factors. Larson has proffered no expert testimony to the contrary.

## APPLICABLE LAW

A. FEDERAL TORT CLAIMS ACT.

This is an action under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2671-2680. The FTCA is a limited waiver of sovereign immunity and the United States can only be liable "under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here, the events giving rise to the action occurred in Minnesota, so Minnesota law applies.

B. COMPARATIVE FAULT.

Minnesota is a comparative fault state. If a plaintiff's

contributory fault is greater than the fault of the person against whom the recovery is sought, then the plaintiff cannot recover at all. Minn. Stat. § 604.01. Any damages allowed must be reduced in proportion to the amount of fault attributable to the person recovering. Id.

C. LANDOWNER AND THE PEDESTRIAN DUTIES OF REASONABLE CARE.

The applicable law is well-established. A land owner owes a duty of reasonable care under the circumstances to others on the land. Sutherland v. Barton, 570 N.W.2d 1, 7 (Minn. 1997); Hedglin v. Church of St. Paul of Sauk Centre, 158 N.W.2d 269, 272 (Minn. 1968); Mattson v. St. Luke's Hospital of St. Paul, 89 N.W.2d 743, 745 (Minn. 1958). However, no such duty arises for conditions on the land that are open and obvious dangers. Sutherland, 570 N.W.2d at 7; Peterson v. W.T. Rawleigh Co., 274 Minn. 495, 496-97, 144 N.W.2d 555, 557 (1966)(quoting the Restatement (Second) of Torts § 343A (1965)). "A possessor of land, however, has no duty to an invitee where the anticipated harm involves dangers so obvious that no warning is necessary." Baber v. Dill, 531 N.W.2d 493, 496, (Minn. 1995)(citing Peterson, 144 N.W.2d at 558). The test for whether a hazardous condition is open and obvious is not whether the injured party actually saw the danger, but whether it was in fact visible. Munoz v. Applebaum's Food Mart, 196 N.W.2d 921, 922 (Minn. 1972); Martinez v. Minnesota Zoological Gardens, 526 N.W.2d 416, 418-19 (Minn. App. 1995), review denied (Minn. Mar. 29, 1995).

The Minnesota Supreme Court has found "the slipperiness of ice" as being an obvious danger. Parr v. Hamnes, 228 N.W.2d 234, 238 (Minn. 1975). Although the possessor of land has a duty to exercise reasonable care to persons entering the property, the "invitee is under a corresponding duty to exercise reasonable care for his own safety and to observe that which is obvious to the ordinary prudent person." Carlson v. Rand, 146 N.W.2d 190, 194 (Minn. 1966), quoting Tonne v. Becker Grain & Lumber Co., 139 N.W.2d 797,797 (Minn. 1966).

## DISCUSSION

A. LIABILITY.

The United States owed no duty to Larson and therefore cannot be found negligent or liable. No duty existed because the alleged danger was open and obvious to Larson. Larson will testify at trial as he did in his deposition that he saw the road in front of him as he walked, that the road appeared "shiny", that the road under his feet felt "slippery", and that, accordingly, he walked more cautiously. Nevertheless, he fell. By his own testimony, Larson will admit he knew of the danger, appreciated the danger, but nevertheless chose to proceed to walk on the dangerous ice. Because the danger confronting him was open and obvious, the United States had no duty to Larson and, therefore, cannot be liable.

For the same reasons, the United States owed no duty to Larson because of Larson's primary assumption of the risk. If a plaintiff

assumes the risk in the primary sense, the defendant owes no duty to the plaintiff. Again, Larson knew of the risk, appreciated the risk, and nevertheless voluntarily chose to accept the risk even though he had the choice to avoid it. He could have but failed to walk around the ice patch or to take any of the number of alternative paths down Vandenburg Drive that night.

Even if the United States owed a duty to Larson, United States discharged that duty. Larson's only claim of negligence is that the BOP was not using salt on Vandenburg Drive on the day in question. However, BOP staff will testify the sand mixture that was placed on Vandenburg Drive that day did, in fact, contain both sand and rock salt. Moreover, inmate Leo Piatz testify the sand contained rock salt. Thus, Larson's only premise of liability is fundamentally flawed.

In any event, Larson's secondary assumption of the risk and other comparative fault far exceeded any negligence on the part of the BOP. Again, he observed and felt the risk, appreciated the risk, but nevertheless chose to take the risk notwithstanding the available option of walking around the ice patch or walking elsewhere on Vandenburg Drive.

B. DAMAGES.

1. Past medical expenses.

Larson may attempt to proffer evidence of his past medical expenses. The Court should reject any claim for past medical

expenses incurred for several reasons. First, with respect to any medical expenses incurred prior to Larson's release from BOP custody on March 21, 2003, all of those expenses were borne by the BOP and, therefore, cannot be recovered in this lawsuit. Furthermore, the Court should not permit any evidence of the amount of these expenses because these expenses are not relevant and the prejudice to the government would exceed any probative value of the evidence. Fed. R. Evid. 403. The BOP is responsible for providing reasonable, necessary, and adequate medical care for inmates pursuant to the Constitution and statute. Pursuant to those obligations, the BOP provided medical care to Larson. Therefore, Larson should not recover any damages for such medical care.

Larson may claim the cost of the medical expenses should be admissible as to evidence of the severity of his injuries. However, the Court should decline this proffer. To allow evidence of the medical expenses born by the BOP in an attempt to inflate a tort recovery would amount to double recovery and to a punitive award which is not permitted. 28 U.S.C. § 2674.

With respect to the medical expenses incurred after Larson left BOP custody, the Court should not entertain that claim either. As noted, Larson had a pre-existing back injury. He has not proffered any expert testimony to establish that the fusion surgery was caused in whole or in part by the fall in question or that the fusion surgery was both reasonable and necessary. In the absence

of such expert testimony as to causation, necessity, and reasonableness, there should be no recovery.

2. Future medical expenses.

Larson has not proffered any expert testimony to suggest that he will require any additional medical treatment in the future. Therefore, he should not be able to recover for any potential future medical expenses. Future damages, including future medical expenses, must be proved to a reasonable certainty and such proof cannot be remote, speculative, or conjectural. Pietrzak v. Eggen, 295 N.W.2d 504, 507 (Minn. 1980). Typically, expert testimony is required. Id.

3. Impairment of future earning capacity.

Larson may claim he has an impairment of his future earning capacity due to the fall. However, he appears to be in the same position today as he was in November 1999 prior to the fall, and as he was prior to his incarceration in February 1998. Specifically, prior to his incarceration, Larson was engaged in what can be described as light duty work at his automotive business. After the surgery in August 1999 but before the fall in November 1999, Larson was cleared for light duty work by the physician. Moreover, since he left the BOP custody, Larson has been working 40 hours per week at a light duty job. Larson has not proffered any expert testimony that he indeed has any impairment of future capacity, that such impairment was caused directly by the fall, or as to the amount of

such impairment of future earning capacity. Again, his proof is remote, speculative, and conjectural–if not utterly lacking.

C. OTHER ISSUES.

There exist several unresolved substantive and evidentiary issues.

1. The only proper party defendant.

Here, Larson named as defendants the United States, the United States Department of Justice, and the Federal Bureau of Prisons. However, the only proper party defendant under the FTCA is the United States. 28 U.S.C. § 1346(b), 2672, and 2679. Therefore, the Court should dismiss the two defendants other than the United States before the trial commences.

2. The amount of any damages is limited to the amount of the claim made to the agency.

In the event that the Court finds that Larson is entitled to a recovery, that recovery would be limited to the amount of his administrative claim, here, $250,000.00. 28 U.S.C. § 2675(b). Larson cannot avail himself of the exception based on newly discovered evidence or proof of intervening facts relating to the amount of the claim. Id. Here, Larson's administrative claim was submitted on August 30, 2000, after the second surgery in May 2000. In his claim, he specifically mentions the possibility of requiring additional surgery. In fact, he did have additional surgery in April 2003. Therefore, the exception does not apply.

3. Shoulder injury damages limited by dismissal of second lawsuit.

Larson claims that his shoulder was injured in the fall. The BOP provided surgery to Larson in October 2000. Larson testified that the shoulder surgery was successful. Thus, apart from any general damages attributed to having to undergo surgery, Larson cannot recover any damages for the injuries to his shoulder. Larson may claim damages for the 341 day delay in providing the surgery. That claim, however, was raised and dismissed in his earlier lawsuit. Larson v. United States, Civil No. 02-4851 (DSD/SRN). In that case, the United States moved for a dismissal. Magistrate Judge Nelson recommended dismissal with prejudice for two reasons. First, any FTCA action based on medical malpractice was barred because Larson failed to comply with Minn. Stat. 145.682 regarding expert affidavits. Secondly, any constitutional claim based on the delay was not cognizable against the United States on sovereign immunity grounds. This Court granted the motion to dismiss by order dated December 16, 2003. Claim preclusion prohibits relitigating this issue.

4. Larson's damages are strictly limited.

Larson cannot recover for any injuries or damages related in any way to his preexisting work-related back injury. On March 8, 1999, Larson was involved in an accident while he was on the job clearing snow. He claims his back was injured in that accident. Inmates injured on the job are covered under the Inmate

Compensation Act, 18 U.S.C. § 4126. That provision provides inmates their exclusive remedy for work-related injuries, including any aggravation of those injuries by subsequent negligent treatment of that injury. United States v. Demko, 385 U.S. 149, 152-53 (1966); Vander v. United States Dept. of Justice, 268 F.3d. 661, 664 (9th Cir. 2001); Wooten v. United States, 825 F.2d 1039, 1045 (6th Cir. 1987); Ashton v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980); Sturgeon v. Federal Prison Industries, 608 F.2d 1153, 1154 (8th Cir. 1979). Thus, to the extent Larson seeks redress for any sequelae of his work related injury, this Court lacks jurisdiction to entertain or award such a claim.

Similarly, under Minnesota law, a plaintiff claiming an aggravation of a pre-existing injury may recover damages only for the aggravation, not the underlying injury. Leubner v. Sterner, 493 N.W.2d 119, 122 (Minn. 1992); Swanson v. Minneapolis St. Ry. Co., 90 N.W.2d 514 (Minn. 1958); Nelson v. Twin City Motor Bus Co., 58 N.W.2d 561 (Minn. 1953); Minn. Jury Inst. Guide, JIG 163. Expert testimony would be required to differentiate between the original injury and the aggravation. This preclusion bar includes any and all damages that may be attributed to that work related injury. For example, here Larson seeks damages for the medical expenses for the spinal fusion surgery done in April 2003. Because that surgery may have been the result at least in part of his work related injury of March 1999 (see Graebner Reports), Larson is obliged to

proffer expert testimony to establish what percentage, if any, is attributable solely to the aggravation. Here, Larson has not proffered any expert testimony on what portion of the injuries, medical expenses, or other damages, if any, would be attributed to the fall of November 1999 as opposed to the work related injury of March 1999. Indeed, Larson has not proffered any expert testimony other than a terse statement by a treating physician in a letter dated June 2003 that the fall aggravated his pre-existing condition.

5. Evidence of convictions is admissible.

The United States intends to proffer evidence of the felony convictions of Larson and, if he is called, Leo Piatz. Evidence of those convictions is admissible. Fed. R. Evid. 609. See generally, Green v. Bock Laundary Mach. Co., 490 U.S. 504 (1989).

Dated: May 21, 2004

THOMAS B. HEFFELFINGER
United States Attorney

s/ Friedrich AP Siekert

BY: FRIEDRICH A. P. SIEKERT
Assistant U.S. Attorney
Attorney ID No. 142013
600 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415
(612) 664-5600

Attorneys for the United States of America