UNITED STATES DISTRICT COURT
District of Minnesota
Fifth Division

---

David C. Larson,

Case No.: 01-1580 DSD/SRN

Plaintiff.

vs.

**PLAINTIFF'S TRIAL BRIEF**

United States of America,

Defendant.

---

## I. INTRODUCTION

On November 24, 1999, David C. Larson sustained serious injury to his low back in a fall on an icy walkway on the premises of the Federal Prison Camp at Duluth, Minnesota. Many of the facts surrounding the circumstances of this injury are undisputed. It is clear the parties disagree about Defendant's liability to Mr. Larson for his injuries.

David C. Larson filed a timely Notice of Claim with the Defendant in accordance with the terms and provisions of the Federal Tort Claims Act. Later, he filed an amended claim alleging damages of $1,000,000.00 sustained as a consequence of this fall.

Defendant is legally responsible to Mr. Larson for the injuries he sustained in this fall and the resulting damages because:

SCANNED
MAY 26 2004
U.S. DISTRICT COURT DULUTH

(1) The Defendant stored snow cleared from the walkways of the Duluth Federal Prison Camp in such a way that water caused by melting snow would run downhill and accumulate on the main walkway used by Mr. Larson and his fellow inmates, where it would then freeze and present a hazard to Mr. Larson and others;

(2) No alternative walkway safer for use by Mr. Larson and his fellow inmates was made available by Defendant; and

(3) Defendant failed to use sand or de-icer to make the frozen walkway it had created safe for use by Mr. Larson and his fellow inmates. As a result, Mr. Larson slipped and fell the evening of November 24, 1999 while on his way to make a holiday telephone call to his wife, Valerie. In the fall, he sustained severe injury to his back and shoulder that has resulted in multiple surgeries and residual permanent limitations.

## II. FACTS

### A. Undisputed facts.

David C. Larson had been incarcerated at the Federal Prison Camp in Duluth, Minnesota beginning February 1998. He was a member of the landscaping crew that did snow removal during the winter months in Duluth and so was familiar with its methods and practices, as well as the directives it received from Warden Smith.

Duluth had its first snowstorm of the 1999-2000 winter on November 23, 1999. Nearly six inches of snow fell that day and into the early morning hours of the following day, November 24, 1999. During the daylight hours of Wednesday, November 24, 1999 (the day before the Thanksgiving holiday), Mr.

Larson's snow removal crew removed all the snow on Vandenberg Drive, the main Federal Prison Camp thoroughfare.

The large volume of snow removed by the crew resulted in high snowbanks being left along the edges of Vandenberg Drive, leaving no walkway for pedestrians except the street. The only access Mr. Larson had to the phone room to contact his wife was across this icy street.

At least some of the snow that was removed from Vandenberg Drive and other thoroughfares was dumped near the food service building, at the top of a hill that sloped down to Vandenberg Drive. From there, it melted and ran downhill to the street where it pooled.

The portion of Vandenberg Drive that lies in front of the building containing the phone room for the Camp is in a depression where water can accumulate. During the day when snow removal operations were underway, the air temperature was above freezing and all snow on Vandenberg Drive was successfully removed. The above-freezing temperatures also melted the snow piled by the food service building and the snow melt flowed downhill to Vandenberg Drive, where it pooled in the depression in front of the building housing the phone room. After the sun set that evening, however, the temperature dropped below freezing, so the pool of water on Vandenberg Drive in front of the phone room building froze.

Later that evening, long after sunset, Mr. Larson made his way from his dormitory to the phone room so he could telephone his wife. As Mr. Larson approached the phone room, he encountered ice on Vandenberg Drive where it had formed in the depression in front of the building in which the phone room is housed. He slipped on the ice and fell, suffering low back and shoulder injuries.

As a consequence of the injuries he suffered November 24, 1999, Mr. Larson was treated initially by health care personnel at the Federal Prison Camp. Later, he was transferred to the care of Duluth Clinic medical staff and had low back and shoulder surgery performed at St. Mary's Medical Center in Duluth. Eventually, he was released from custody by the United States and has since had additional low back surgery performed at the University of Wisconsin by Dr. Thomas Zdeblick. Mr. Larson has permanent limitations as a result of the injuries he sustained November 24, 1999.

The total unpaid and subrogated medical expenses here are approximately $60,000.00. Although Mr. Larson is limited in his activities of daily living by the injuries, there is no documentable loss of earning capacity.

**B. Disputed facts.**

Warden Smith had a policy of not salting or sanding any of the walkways or streets frequented by the prisoners housed at the Federal Prison Camp in Duluth. Warden Smith had announced this policy at several meetings with the

inmates earlier in the autumn of 1999. His reasoning was that the cost of sanding and salting the walkways used by the inmates was simply too high.

The night Mr. Larson fell, November 24, 1999, several other inmates also fell at the same location. When the snow removal crew heard Mr. Larson and some other inmates had fallen on the ice in front of the building housing the phone building on Vandenberg Drive, they salted and sanded this ice to make it safer for use by the inmates.

The total amount of medical expense incurred by Mr. Larson for care made necessary by this injury, including amounts already paid by Defendant, is over $90,000.00.

## III. DISCUSSION

### A. Liability lies with Defendant.

There is little dispute about the nature or extent of the injuries sustained by David C. Larson as a consequence of this fall. They are significant, having brought about the need for three surgeries. Both the treating surgeon and the adverse medical examiner agree Mr. Larson will have permanent limitations as a consequence of these injuries. This trial is about the liability of the Defendant to Mr. Larson for the injuries.

There is no question Defendant knew, or should have known, of the existence of the risk of harm to users of Vandenberg Drive, including Mr. Larson,

presented by the presence of the icy accumulation in front of the building where the phone room was located the night of November 24, 1999. Regardless of whether Warden Smith made a conscious and deliberate decision to prohibit the sanding or salting of Vandenberg Drive that evening, Defendant is liable to Mr. Larson for its failure to do so under these circumstances.

The substantive law of Minnesota controls the outcome of the liability dispute in this action. Minnesota law clearly requires the landowner, including Defendant, to clear its property of all dangerous conditions, including snow and ice, in order for it to discharge its duty of reasonable care to users of the land, including someone in Mr. Larson's position. Frykman v. University of Minnesota – Duluth, 611 N.W.2d 379 (Minn. App. 2000).

Under the circumstances of the case at hand, the Defendant knew, or should have known, of the tendency of snow melt to accumulate in the depression in Vandenberg Drive in front of the building housing the phone room. It had actual, or constructive, notice of the tendency of this water to freeze when the temperatures permitted it. It knew that inmates used Vandenberg Drive as a walkway, especially during the evening, to get to the building housing the phone room to telephone their loved ones, especially on evenings preceding major holidays such as Thanksgiving. It failed to furnish alternative routes to the phone room that would have avoided the ice in front of the building. This was the only way Mr. Larson had to contact his wife.

Whether Defendant had sanded or salted Vandenberg Drive during the daylight hours preceding Mr. Larson's injury is irrelevant, given that the snow melt accumulated in the depression on Vandenberg Drive froze when the temperatures dropped below freezing after sunset the evening of November 24, 1999. The ice would have to have been salted and sanded after it had been formed, in the evening, in order for the surface to be safe for passers-by such as Mr. Larson. Defendant failed to do so.

Under these circumstances, it is clear the Defendant failed in its duty to use reasonable care to protect Mr. Larson from the risk of injury posed by the presence of the icy accumulation on Vandenberg Drive. It is therefore liable to him for the injuries he sustained November 24, 1999.

**B. Damages.**

There are some potential issues regarding damages that need to be addressed, even though no significant factual dispute regarding damages exists in this case. The most important of those relates to the partial defense of aggravation proffered by Defendant in this action.

1. Aggravation

The burden of showing that portion of Mr. Larson's damages resulting from a pre-existing condition is on Defendant under Minnesota law. Jenson v. Eveleth Taconite Company, 130 Fed.3d 1287 (8th Cir. 1997); Canada v. McCarthy,

567 N.W.2d 496 (Minn. 1997). To the extent that there might be an argument that some of Mr. Larson's present problems are attributable to some prior, unrelated event, the burden of proving that is on the Defendant, not on the Plaintiff. Since Defendant has no evidence of the extent to which Mr. Larson's present difficulties are related to any other event or occurrence, the Court is justified in not considering any aggravation defense in this case.

2. Relevancy of medical expenses.

A second issue relates to the medical expenses incurred in connection with the treatment of these injuries. Mr. Larson does not contend the Defendant should be forced to pay some of these expenses twice. The purpose in introducing evidence of the medical expenses incurred by Defendant and paid by Defendant in treating Mr. Larson for the injuries sustained November 24, 1999 is simply to show the severity and extent of the injury by reflecting that injury in the mirror of the medical expense charges. Under these circumstances, such evidence is clearly relevant in determining the severity of the injuries suffered by Mr. Larson November 24, 1999.

The evidence of the amounts of medical expense incurred for treating Mr. Larson for these injuries following his release from confinement is relevant because, in the event of a successful recovery by Mr. Larson in this action, he is legally obligated to repay those charges to his health insurer. The Court will

need to know what those charges are in order to determine whether they ought to be paid and if so, in what amounts.

Rules 401 and 403 of the Federal Rules of Evidence permit introduction of this evidence for what it is worth. This is true especially in the case of a trial before the court sitting without a jury, since there is no chance of jury deliberations being tainted by potentially misleading or confusing evidence.

3. <u>Limitation on amount</u>.

The third issue regarding damages relates to the assertion by the Defendant that Mr. Larson is limited in his recovery to the amounts requested in the claims he presented to the United States for this injury. Regardless, Mr. Larson submitted an amended claim in which he requested $1,000,000.00 after he realized the severity and extent of his disability. He complied with the time limitations imposed by the law when he presented his initial claim. As soon as he was aware of the full extent of his injuries, eh presented an amended claim. The law should not prevent him from being fully compensated under these circumstances, where he was required by time limitations to present a claim for compensation before he knew the full extent of his injuries.

## IV. CONCLUSION

When this Court has fully considered all the evidence, it will become clear the major issue to be decided is that of liability. Substantive law from Minnesota clearly obligated Defendant to salt or sand the ice on Vandenberg Drive in front of the building housing the phone room before inmates, including Mr. Larson, walked on it the evening of November 24, 1999. Defendant was aware of the risk of injury to Mr. Larson and the others, and so should have salted and sanded this icy spot in order to discharge its obligation to exercise reasonable care. Its failure to do so renders it liable to Mr. Larson for his injuries.

Mr. Larson's injuries are considerable, as demonstrated in part by the enormous medical expense occasioned by them. Absent evidence of aggravation put forward by Defendant, this need not be considered by the Court in rendering a finding favorable to the Plaintiff.

Respectfully submitted,

Dated: 05-26-04

FALSANI, BALMER, PETERSON
& QUINN

By: [signature]
James W. Balmer (#4376)
1200 Alworth Building
306 West Superior Street
Duluth, Minnesota 55802-1800
(218) 723-1990
*Attorneys for Plaintiff*