UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1580(DSD/SRN)

David C. Larson,

Plaintiff,

v.

United States of America,
U.S. Department of Justice
and Federal Bureau of Prisons,

Defendants.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT**

James W. Balmer, Esq. and Falsani, Balmer, Peterson, Quinn & Beyer, 306 West Superior Street, Suite 1200, Duluth, MN 55802 and Matthew P. Bandt, Esq. and Jardine, Logan & O'Brien, 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042, counsel for plaintiff.

Friedrich AP Siekert, Assistant United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, counsel for defendants.

## INTRODUCTION

This matter came on before the court sitting without a jury on January 24, 2005. The court listened to testimony of witnesses, received exhibits and heard arguments of counsel. Based on the evidence and arguments of counsel, the file and proceedings herein, the court makes the following:

## FINDINGS OF FACT

1. This is an action against the United States of America ("the United States") pursuant to the Federal Tort Claims Act

("FTCA"). 28 U.S.C. §§ 1346(b), 2671-2680. The case arises out of a slip and fall accident at the Federal Prison Camp, Duluth, Minnesota ("FPC Duluth"). An agency of the United States, the Federal Bureau of Prisons ("BOP") operates FPC Duluth.

2. Plaintiff David Larson ("Larson") submitted an Administrative Claim in the amount of $250,000 to the BOP which was received about September 7, 2000. The BOP denied the claim by letter dated March 1, 2001. The complaint was filed on August 29, 2001.

3. Larson has not alleged or proved, nor is there any evidence of, any newly discovered evidence or any intervening fact between the presentment of the claim and the time of trial that relates to the amount of the claim. Therefore, any recovery would be limited to the amount of the claim.

4. In 1977, Larson pleaded guilty to and was convicted of six counts of mail fraud and one count of use of a telephone to facilitate a felony. He was sentenced to 71 months of incarceration and on February 2, 1998, Larson presented himself at FPC Duluth to begin serving his sentence. He was assigned to the Landscape/Snow Removal Crew.

5. On or about March 9, 1999, Larson was involved in an accident while operating a vehicle at his job in snow removal. He sustained injuries to his head and, apparently, his back. Subsequently, he hurt his back while working with a sledge hammer

and again later while moving concrete, both of which occurred while he was on the job. That spring he developed right sciatica pain and sought medical attention. An MRI study revealed a herniated disc at the L5/S1 level and Larson was offered a discectomy. On August 29, 1999, Larson underwent an L5/S1 hemilaminectomy/discectomy at St. Mary's Hospital, Duluth, Minnesota at the BOP expense. Dr. Mark Glazier performed the operation. The surgery was successful and provided Larson some temporary relief. After a follow-up exam, Larson was cleared to perform light duty work in mid October 1999. Nevertheless, Larson was never free of pain from his original work-related accident in March 1999.

6. On November 23, 1999, the Duluth area experienced its first major snow storm of the season. On that day nearly six inches of snow fell. The average temperature on November 23 was 31 degrees. On November 24 a trace of snow fell and the temperature reached 37 degrees and dropped to 31-32 degrees that evening.

7. FPC Duluth had a comprehensive snow removal plan in place. Under the plan, snow removal from the streets (including the main street Vandenburg Drive) was three-phased: first, the streets were plowed, then the streets were swept with a large sweeper attached to a truck. Finally, a mixture of sand and rock salt was applied. Inmates would shovel the steps to the buildings and the concrete walks out to the streets. Hand operated snow

blowers, sweepers, and ice scrapers were also used on the walks. Inmates would apply calcium chloride to the concrete sidewalks and steps as necessary. In addition to the snow removal plan, the BOP took other measures to protect inmates. Specifically, the BOP gave safety talks about the dangers of falling which Larson attended. BOP staff, through Mr. Huttle, Mr. Wessberg, BOP officers and others, made it a regular practice to monitor the grounds and Vandenburg Drive specifically to assure it was free of ice and snow.

8. On November 24, the snow removal plan was implemented and at 5:00 a.m. November 24, the snow crew, comprised of inmates, was dispatched. Under the plan, snow removal efforts would have usually been completed by about noon and sand and salt would have been distributed on Vandenburg Drive later that day.

9. Larson testified that he called his wife nearly every evening about 9:00 p.m. He took the same route from his dorm (Building 207) to the phone building (Building 223) south on Vandenburg Drive. From his dorm he would walk south on the sidewalk on the west side of the street to the commissary (Building 217). From that point, he would walk diagonally across Vandenburg Drive. He would then walk south on the east side of Vandenburg Drive in front of the Library (Building 222) to the telephone

building which is the next building south of the library. He walked this route almost every night he was at FPC Duluth from February 2, 1998 until November 24, 1999.

10. Vandenburg Drive is the main street at FPC Duluth. It is asphalt and is about 43 feet wide. It is a crowned road with its peak nearly in the center from which it slopes to the east and to the west sides. On the east side there is no curb, but there is a narrow strip (about one foot wide) of gravel between the asphalt road surface and the grass. Vandenburg Drive is heavily used by inmate pedestrians. It is the main thoroughfare from the dormitories at the north side to the commissary, the activity center, the library, the telephone room and the chapel, among other buildings. Consequently, BOP staff and inmates continually monitor and apply snow and ice removal measures to Vandenburg Drive to assure that it remains free of snow and ice.

11. During snow removal, the entire width of the asphalt Vandenburg Drive including the path Larson took, is plowed, swept, and sand salted. Larson testified that Vandenburg Drive was the "best cared for street" at FPC Duluth and it "was always ice free."

12. On the evening in question, November 24, 1999, Larson testified that on his way to make his nightly call to his wife he took his usual route down Vandenburg Drive. When he was on the east side of Vandenburg Drive he was walking as far to the east as possible while still on the asphalt part of the road. He testified

that the lighting was adequate, that he could see the road in front of him, and that he was able to assess its condition. He described the road as "shiny" and the road under his feet felt "slippery" to him, so he walked more slowly, took shorter steps and kept his hands out of his pockets. He testified that he fell on an ice patch at the edge of the road outside the library building.

13. Larson's only claim of negligence is the alleged failure to put salt on Vandenburg Drive. However, the evidence was that the Vandenburg road was plowed, swept, and sanded and salted that day. Inmate Piatz testified he applied the sand and salt mixture that evening.

14. Larson failed to offer any evidence that BOP staff had actual or constructive knowledge of the hazardous condition he now complains about.

15. As a result of the fall, Larson claims to have re-injured his back and injured his left shoulder. He underwent a second back surgery in May 2000, and a shoulder operation in October 2000, both at BOP expense. While the shoulder surgery was successful, his back allegedly continued to cause him discomfort. He was released from BOP custody in March 2003 and underwent a spinal fusion in April 2003 at the University of Wisconsin.

16. Larson seeks to recover for the 341 day delay in providing the shoulder surgery. However, that claim was the subject of another lawsuit filed by Larson in this district under

Civil No. 02-4851 (DSD/SRN). Based upon the Report and Recommendation dated November 19, 2003, recommending that the claims be dismissed with prejudice, this court dismissed that lawsuit by order dated December 16, 2003. Larson's delay of surgery claim is not before this court.

17. Larson seeks to recover his past medical expenses to date. To the extent that Larson makes any claim for the medical expenses incurred from November 24, 1999, through and including his release from BOP custody on March 21, 2003, he cannot recover those expenses because they have been paid by the BOP. With respect to any medical expenses incurred after March 21, 2003, including specifically the cost attendant to the spinal fusion surgery at the University of Wisconsin, Larson did not offer any expert testimony that those medical expenses were directly caused by the fall of November 24, 1999, or that any such medical expenses were reasonable and necessary.

18. Larson did not offer any expert testimony as to whether he will require any medical procedures or treatment in the future, whether they were caused in whole or in part by the fall, what their cost might be, or that such costs will be necessary and reasonable.

19. The court finds the fall did not directly cause any lost wages or earnings and did not cause any impairment of future earning capacity. Larson admitted he did not lose any wages during

his incarceration through and including his release on March 21, 2003. Thereafter, Larson has been working forty hours a week in a sales capacity. This is the same type of work that Larson was doing for a number of years prior to his incarceration. To the extent that Mr. Larson's future earning capacity maybe limited in some way, the court finds such impairment is due to his felony convictions and not to the fall of November 1999. Additionally, Larson did not offer any expert testimony as to how his back injury impaired his future earning capacity or rendered him permanently and partially disabled in any way. The court finds that the fall did not directly cause any loss of earning capacity to a reasonable degree of medical or other certainty. After the fall, plaintiff Larson was able to perform job related functions in the same manner as he could before the fall.

## CONCLUSIONS OF LAW

1. The court has subject matter jurisdiction over this case pursuant to the FTCA, 28 U.S.C. §1346(b) and 2671-2680.

2. Under the FTCA, the law of the State of Minnesota applies and the United States is liable to the same extent as a private person would be under similar circumstances. 28 U.S.C. § 2674.

3. In Minnesota, a landowner must exercise reasonable care for the protection of persons on its property. Peterson v. Balach,199 N.W. 2d 639 (Minn. 1972); Adee v. Evanson, 281 N.W.2d

177 (Minn. 1979).

4. The mere occurrence of an accident does not establish breach of a legal duty sufficient to constitute negligence in keeping the premises reasonably safe. Bisher v. Homeart Dev. Co., 328 N.W.2d 731,733 (Minn. 1982), citing Johnson v. Evanski, 22 N.W.2d 213, 215 (Minn. 1946).

5. A landowner must provide suitable access to the buildings on its land. Strong v. Richfield State Agency, 460 N.W.2d 106, 108-09 (Minn. App. 1990); McIlrath v. College of St. Catherine, 399 N.W.2d 173, 174 (Minn. App. 1987). A landowner is not required to maintain every means of access to his land. Strong, 460 N.W.2d at 108; McIlrath, 399 N.W.2d at 174.

6. Landowners are not liable for harm caused by known and obvious dangers unless the landowner should anticipate the harm despite its obvious nature. Sutherland, 570 N.W.2d at 7; Sperr v. Ramsey County, 429 N.W.2d 315, 317 (Minn. App. 1988); Lawrence v. Hollerich, 394 N.W.2d 853, 855 (Minn. App. 1986), *pet. for rev. denied* (Minn. 1986); Flynn v. Arcade Investment Co., 91 N.W.2d 113, 115 (Minn. 1958); Restatement (Second) of Torts § 343A(1965).

7. Persons entering onto the premises have a duty to exercise reasonable care and "observe that which is obvious to the ordinarily prudent person." Carlson v. Rand, 146 N.W.2d 190, 194 (Minn. 1966), quoting Tonne v. Becker Grain & Lumber Co., 139 N.W.2d 797, 797 (Minn. 1966).

8. A danger is obvious if it is visible. Lawrence v. Hollerich, 394 N.W.2d at 855. Whether a danger is open and obvious depends on an objective determination of whether a person would reasonably have seen the danger, not the subjective consideration of whether the person actually perceived and appreciated the danger. Munoz v. Applebaum's Food Market, 196 N.W.2d 921, 922 (Minn. 1972).

9. Based on the facts proved, Larson assumed the risk of injury.

10. Minnesota recognizes two forms of assumption of risk: primary and secondary. Verberkmoes v. Lutsen Mountains Corp., 844 F. Supp. 1356, 1358 (D. Minn. 1994). Primary assumption of risk defines the limits of the defendant's duty to the plaintiff. Armstrong v. Mailand, 284 N.W.2d 343, 351 (Minn. 1979). It arises

> where [the] parties have voluntarily entered a relationship in which the plaintiff assumes well-known, incidental risks. As to those risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent.

Olson v. Hansen, 216 N.W.2d 124, 127 (Minn. 1974). If the plaintiff has assumed the risk in the primary sense, the defendant owes no duty to the plaintiff. Verberkmoes,844 F. Supp. at 1358; Grisim v. Tapemark Charity Pro-Am Golf Tournament, 415 N.W.2d 874, 875 (Minn. 1987); Walk v. Starkey Machinery, Inc., 180 F.3d 937, 939 (8th Cir. 1999). The elements of primary assumption of risk

are (a) the plaintiff knew of the risk, (b) the plaintiff appreciated the risk, and (c) the plaintiff voluntarily chose to accept the risk, even though he or she had the choice to avoid it. Andren v. White Rogers, Co., 465 N.W.2d 102, 105 (Minn. App. 1991) petition for review denied (March 27, 1991), citing inter alia Armstrong v. Mailand, 284 N.W.2d 343, 351 (Minn. 1979) and Olson v. Hansen, 216 N.W.2d 124, 127-28 (Minn. 1974). By voluntarily entering into a situation where the defendant's negligence is obvious, the plaintiff accepts and consents to it and agrees to relieve the defendant of its duty. Andren, 465 N.W.2d at 105.

11. Secondary assumption of risk applies to situations in which the plaintiff has actual knowledge of the risk, appreciation for the risk, and voluntarily chooses to risk the injury. Verberkmoes, 844 F. Supp. at 1358. "The essential element of secondary assumption of risk is the plaintiff's voluntary choice to encounter a known and appreciated danger created by the negligence of the defendant." Olson v. Hansen, 216 N.W.2d 124, 128 (Minn. 1974).

12. A landowner can be deemed liable if he has actual or constructive knowledge of the subject hazardous condition, but fails to take reasonable efforts to rectify the hazard or to warn others of the hazard. Messener v. Red Owl Stores, 57 N.W.2d 659, 661 (Minn. 1953); Otto v. City of St. Paul, 460 N.W.2d 359, 363 (Minn. App. 1990). Constructive knowledge may be established by

showing that a condition was present for such a period as to constitute constructive notice of the hazard. Anderson v. St. Thomas More Newman Ctr., 178 N.W.2d 242, 243-44 (Minn. 1970). If the plaintiff can only speculate as to who caused the hazardous condition or how long it existed, judgement for the landowner is warranted. Bob Useldinger & Sons, Inc. v. Hangsleben, 505 N.W.2d 323, 328 (Minn. 1993); Otis v. First Nat'l Bank of Mpls., 195 N.W.2d 432 (Minn. 1972).

13. The court finds that the slip and fall of November 24, 1999 was caused solely and proximately by Larson himself.

14. Immediately prior to his fall on November 24, 1999, Larson had knowledge of and appreciation of the risk that a fall on ice might entail generally and that he might slip on Vandenburg Drive specifically. He saw the condition of the street which he described as "shiny." The pavement felt "slippery" under foot. Accordingly, he slowed his gait because of the conditions. Nevertheless, he proceeded along his predetermined path which he claims contained a hazardous ice patch. He could have taken another route, for example down the center or west side of Vandenberg Drive. He consciously chose to walk the route he chose purely as a convenience to himself. The danger was open and obvious. Larson primarily assumed the risk of the fall. Therefore, the United States did not owe a duty to plaintiff Larson to protect him from the risk of falling on the street.

15. Larson failed to show that any employee or agent of the United States was negligent or that any act or omission of any employee or agent of the United States resulted in the ice condition that allegedly caused Larson's fall. Larson's sole claim of negligence was that salt was not placed on Vandenburg Drive. However, the BOP staff testified that sand and rock salt was used on Vandenburg Drive. Inmate Leo Piatz testified that a sand and rock salt mixture was used. BOP personnel constantly monitored Vandenburg Drive to make sure it was free of snow and ice. Additionally, the BOP gave Larson and other inmates safety talks about slips and falls.

16. Larson's comparative fault or negligence far exceeded any negligence of the United States and, therefore, Larson is barred from any recovery. Minn. Stat. § 604.01. A pedestrian is required to exercise due care for his own safety. In addition to his primary assumption of risk, as set forth above, Larson failed to exercise due care for his own safety by not walking around the patch of ice or by not taking an alternate path to the telephone building. He knew of the danger, appreciated the danger, but he voluntarily chose to risk the danger rather than taking easy steps to avoid the danger. His secondary assumption of risk bars this claim.

17. Larson failed to produce any evidence to establish that the BOP had actual or constructive notice of the presence of ice where and when he allegedly fell that night.

18. For these reasons, the court concludes that the United States is not liable to plaintiff Larson.

19. Since Larson cannot recover for the reasons stated above, his subrogated health insurer likewise cannot recover, because its right to recover is dependant on Larson's right to recover. See Haase v. Haase, 369 N.W.2d 311 (Minn. App. 1985). The subrogated insurer must establish the nature and extent of its subrogee's injuries and the necessity and reasonableness of the medical expenses for which it paid. See M.W. Ettinger v. Transfer & Leasing Co. v. Schaper Mfg., 494 N.W.2d 29 (Minn. 1992). For the reasons stated above, the health insurance carrier cannot recover the medical, hospital and rehabilitation expenses attendant to the spinal fusion surgery or otherwise.

20. Where a preexisting condition or disability is aggravated by the negligence of another person, the measure of damages is limited to the additional injury caused by the aggravation. Leubner v. Sterner, 493 N.W.2d 119, 122 (Minn. 1992); Swanson v. Minneapolis St. Ry. Co., 90 N.W.2d 514 (Minn. 1958); Nelson v. Twin City Motor Bus Co., 58 N.W.2d 561 (Minn. 1953); Minn. Jury Inst. Guide, JIG 91.40. Here, Larson did not offer any testimony to a reasonable degree of medical certainty the amount, if any, of

additional injury caused by any aggravation, if any, over and above his preexisting condition; therefore, he cannot recover for any such damages.

21. Larson cannot recover for any injuries or damages related in any way to his preexisting work-related back injury. On March 8, 1999, Larson was involved in an accident while he was on the job clearing snow. He claims his back was injured in that accident. Inmates injured on the job are covered under the Inmate Compensation Act 18 U.S.C. § 4126. That provision provides inmates their exclusive remedy for work-related injuries, including any aggravation of those injuries by subsequent negligent treatment of that injury. United States v. Demko, 385 U.S. 149, 152-53 (1966); Vander v. United States Dept. of Justice, 268 F.3d. 661, 664 (9th Cir. 2001); Wooten v. United States, 825 F.2d 1039, 1045 (6th Cir. 1987); Ashton v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980); Sturgeon v. Federal Prison Industries, 608 F.2d 1153, 1154 (8th Cir. 1979). Thus, to the extent Larson seeks redress for any sequelae of his work related injuries, this court lacks jurisdiction to entertain or award such a claim. Larson did not offer any testimony to a reasonable degree of medical certainty as to the amount, if any, of additional injury caused by any aggravation, if any, over and above his preexisting condition.

22. The United States is entitled to judgment.

**ORDER FOR JUDGMENT**

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is hereby ordered that judgment be entered as follows:

**IT IS ORDERED AND ADJUDGED** that plaintiff Larson take nothing by way of his complaint and that the defendant United States of America is granted judgment as a matter of law.

Dated: April 14, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court